The first case on a regular argument calendar today is Federal Defenders of New York versus Federal Bureau of Prisons, number 191778. Why don't you wait for a minute still until the courtroom is clear. All right, Ms. Dabbs, you may proceed. Thank you very much. Good morning. May it please the Court, my name is Jenna Dabbs on behalf of the Federal Defenders of New York. So what's going on now? The events that precipitated your suit occurred nearly about a year ago. And are the problems ongoing? Have they been remedied? What are we dealing with? So, Your Honor, the immediate problems of a year ago, which were tied to a series of events, included the shutdown of the government and there were two discrete events that impacted the electrical systems at the MDC, one more significant than the other. What is going on is that the practice of which we complained before the district court, which was illustrated through that series of events, was the BOP's repeated cancellations and delays of attorney visits, often without notice, in a manner that we You mean it's what they did? It's not, I mean, it's what you're saying is the practice is what the facts were as of a year ago, correct? I'm saying that the facts as of a year ago illustrated and were the practice in effect. I still don't quite follow you. Now, continuously when? So I'm happy to provide some dates, Your Honor. We've certainly been tracking this. There have been a number of occasions since the filing of our case and leading up to the present day when attorney visits have been canceled, have been delayed for things that we think were predictable events in the life of the institution that ultimately could have been solved for and were not. I'm talking about occasions on which visits were canceled because of electrical maintenance, occasions where visits were canceled because of computer and power outages, staffing issues that related to attendance at a retirement party. Hang on a second. These are not alleged in your complaint, correct? Well, I'm responding. I understand. I just want to make sure. We're on a 12B6 dismissal, but you referred to a practice, and the complaint focuses on one period in January and early February last year in which a fire occurred, electrical outages occurred, and there were a number of days identified in your complaint, in which pretrial detainees were denied access to their counsel. But you're saying that maybe it's been reported in the newspaper, but that there have been other occasions since, and that if you were to file an amended complaint, for example, you could show that this is a practice that is recurrent over time. Is that what you're saying? That's exactly what I'm saying. I would also argue that in the proceedings below, even if the complaint ‑‑ Why haven't you filed an amended complaint? I'm sorry? We didn't file an amended complaint going to this point and focusing on allegations relating to a pattern or practice. The bottom line is why isn't the case moot, right? That's what we're really talking about. I mean, there was definitely a basis for you to take action back then when access was being denied, whatever your rights may be, but certainly understandable at the time. We didn't amend ‑‑ I think what you're looking for here is some sort of a ruling by this Court that there have to be standards or something of that sort here, and you're latched on to a timeframe that really dissipated in February of last year. And that's ‑‑ the problem I'm having with the case is whether it's moot. So let me address that series of questions, Your Honor. We did not amend the complaint in the district court to focus more comprehensively on a pattern or practice. We made a number of arguments in those proceedings. Our papers in support of our motion for a temporary restraining order and preliminary injunction included, I think, an extensive discussion of what we viewed as a cavalier attitude, a lack of attention, sufficient safeguarding of the right that we were asserting. Everything was ‑‑ attorney visits were restored after the incident in February, correct, early February, February 4th or 5th. Then it was back to business as usual. And I guess what you're saying is business as usual is unsatisfactory, but you haven't ‑‑ and there have been incidents since, but you haven't amended your complaint to bring that up. And so I'm just wondering whether this ‑‑ whether we have a case of controversy  Well, it was clear that before the district court any amendment to focus on ongoing circumstances would have been futile because the district court had made a judgment that the Federal defenders could not themselves pursue a cause of action. I'm glad you didn't file a complaint and get an argument, get a decision on futility. I mean, maybe you don't think there's enough for an amended complaint. No, I certainly think that there's enough for an amended complaint. I've referred to some occasions since the filing of the case that would lend themselves to that. I think that the facts themselves Let me ask, so as to the Sixth Amendment claim, which I think started ‑‑ concerned the district court in part, were you, is the Federal defenders asserting its own organizational standing to pursue a Sixth Amendment and APA claim, or are you pursuing or trying to assert the detainee's claim? And I ask because I understand the detainees have their own current suit pending before Judge Brody in which they complain of the loss of access to counsel during the very same period that we're talking about here, and they seek damages for that. But I wanted to clarify on what basis you were pursuing a Sixth Amendment type claim because that, I think, bears on what kind of relief might be appropriate if you were allowed to continue. Absolutely. It's a critical question. We are absolutely pursuing a claim on behalf of the Federal defenders and not on behalf of their clients. And what gives you standing? They have a distinct interest here. It is overlapping in some respects with the interests of their clients, but it is their own organizational interest that we think is addressed by this lawsuit. We think that they have standing as a party challenging, with the Court's equitable jurisdiction, an unconstitutional act by the executive branch, by the government. We think that all that we have to show for bringing that sort of a claim is clear under the case law is a showing of Article III standing. What about the third parties? Go ahead. But what about this suit by the inmates who apparently are separately represented? Once that happens, I'm not entirely clear what your organization's role would be. So the Federal defenders have a distinct interest in connection with their ability to visit clients. It derives, we believe, from the Sixth Amendment itself, which has been interpreted by the courts as both conferring certain rights on defense counsel, including the Federal defenders, and how they carry out their representational role, but also imposing significant obligations and expectations on them. We think that they have their own interest and right to vindicate here that is apart  The Sixth Amendment speaks to the rights of the accused to counsel. And the third-party standing doctrine is disfavored generally. I mean, I was focused more on whether you have rights under the APA, which addresses any person who's aggrieved and is a much broader standing basis than the Sixth Amendment. What's your strongest basis for you pressing your own rights as an organization under the Sixth Amendment under the Court's equitable powers? I think the strongest basis, Your Honor, is a line of cases, and I will provide some names where courts have effectively held that assuming you satisfy Article III standing obligations, the district court found that here. We don't think that that's seriously arguable. As long as you satisfy Article III requirements, you may invoke the equitable jurisdiction and power of the court to allege violations of a constitutional right and to attempt to redress those violations. So I think there's a question of whether the zone of interest applies to a constitutional the Sixth Amendment, as my colleague has pointed out, protects the rights of the accused. And so that's a separate question here. But beyond that, I want to just quickly go back, and then we can stop talking about this. I want to quickly go back to the Brody suit, the suit before Judge Brody. Why? Did you try and intervene or join in that suit? Sorry. Are you speaking about the class action lawsuit that is focused on conditions? We have not attempted to intervene in that case. That is a class action. It's a class action of individuals detained at the MDC. We're complaining about their access to their counsel. That is one of a long series of complaints in the case. Yet, look, I think our view, and I think it's a really important one. But what do you want more than that? What we want is an opportunity to assert the rights of the federal defenders separate and apart from the rights of their clients. Am I right also that they are seeking damages and you're seeking injunctive relief? That's correct. So the remedies that are sought in the suit are different, although I presume if you intervened, you could also have an intervener's complaint and could seek injunctive relief of the same type as you seek here. Is that right? That's right. Look, I think, though ---- It makes sense to have two suits going simultaneously that basically are arguing for the same thing. Well, I actually think that they address different things. I think that a class action by a class of inmates or detainees in this case that is addressed to a broad set of conditions-related problems, and there were many, is not the right ---- That are irrelevant to your case? I wouldn't say that they're irrelevant. And certainly we argued before the district court that they were a part of the complex of facts that impacted the significance of the Sixth Amendment deprivation and that also candidly illustrated a lack of transparency on the part of the BOP and a lack of seriousness. As I read your brief and read the briefs in this case, I kept wondering why the inmates weren't parties. Now I learned that the inmates are parties to a separate suit, and so I'm wondering why this case shouldn't be sent over to Judge Brody for consolidation. Well, because that case ---- Now, I suppose the intervener option is a separate point, and I'm not sure if the Court's question incorporates that. No, either way. Yes. As styled, that case certainly would not be a vehicle to address and vindicate the interest in the right that we think is squarely addressed by our case. Why not? The Federal Rules of Civil Procedure seems to me accommodate that. Your party, your claims don't have to be congruent with claims another party is making. Well, but I also ---- Won't that solve a host of the problems that we are all wrestling with? Look, I think that there's under the rules there's also not a requirement that everything that could be consolidated in one matter has to be consolidated in one matter, and certainly litigants ---- We understand that. We're not ---- we're just asking practical questions. We're also concerned about inconsistent judgment here. No, no. Well, look, I think the fact that the ---- There are different cases going that basically bear on the same question, whether the Sixth Amendment was violated at that as a result of these various incidents. Look, I think it's an issue in a case like that, candidly, that the Sixth Amendment component of that case is a very limited part of it. Also ---- They've got a broader set of claims, but it's within that. And it's the same Sixth Amendment claims that you're making. I'd point out also that the conditions claims that they're making generally about the infrastructure, the electricity, and the conditions of confinement in a kind of concrete way bear directly, I think, on the likelihood of there being future episodes in which access to counsel is denied. Would there be more fires? I mean, that's part of the basic claim of the lawsuit. And the institutional plant is obviously a huge piece of this. I cited more recent examples of electrical issues and maintenance, right? So that's certainly a factor. So has access to counsel been raised in the other suit? My understanding is that it is one of many issues that have been raised in the other suit. You want to keep this action where it is with us reviewing it in order to get a ruling in place for the benefit of the Federal defenders and in order to get us to say that you have standing to bring these suits in the future as an institutional matter. Your client is the Federal defenders. And so you're representing that client, and you want a specific ruling, independent of whatever any inmates want to bring, that accomplishes these goals. Is that the institution over the rights of the particular inmates at that time? Well, this is the institution having different rights, rights that are overlapping in some respect but still important and distinct. Right. But there's no really – I can't think of a good reason why they couldn't be – the lawsuits couldn't be combined. Your Honor, the Court's proposal of carrying forward with the pending class action litigation with the Federal defenders contemplating intervening in that case in order to assert their interests will necessarily run into the same obstacles that the district court here found. So the issue that we're asking the Court to take up and to decide, this overarching standing issue, the proposal is not satisfactory in the sense that we run into the same legal objection or obstacle that we did before the district court, which we think is not – it was incorrectly decided. You mean if you were to move to intervene, you think you would be challenged on standing just as you are in this suit? I would expect. Certainly if I were on the other side, I would make that challenge on this record. What I'm saying is that there may be a case going forward. That case, as styled now, and I think ultimately even if the Federal defenders attempted to intervene in it, same issue as we've been – as we've discussed at least in our briefs and confronted in the district court, that action does not address the interest of the Federal defenders. It's an interest in adequately representing and having access to their clients. And it – And what is the injury to the Federal defenders per se? Is that diversion of resources? It's inefficient use of your resources in providing defense services because you can't access clients? I mean, as an organization, what is the injury that you suffer? So the resources argument is a key one. And certainly what happens any time – you know, the Federal defenders represent something like half of the detainees at the MDC. They are visiting the facility on a daily basis. What happens when you arrive and you can't see a client? And what you have to do as a result of that is – is complicated and takes resources. Also, what happened in the early part of last year and the resources that the Federal defenders had to devote to just trying to figure out what was going on and trying to understand and figure out how to advocate for their clients. Essentially, this is a resources argument. It is a resources argument. It's also a thwarting of their organizational purpose and objective, which is a recognized injury in the organizational standing context. In the papers, you advert to misleading statements by the BOP to judge – the chief judges. What's that all about? Well, Your Honor, you know, a key component of what we've asserted is the lack of notice. And what happened in the early part of last year, as attorney visits were being canceled on a daily basis – I don't need to run up. I just need to know what's happening. Fair enough. The claim in the papers is that she was misled by something – in your papers that she was misled by something the BOP said. What was it? What it was was to say that as a result of the fire, the heating systems and the hot water were not impacted by the electrical outage. We don't believe that that was correct. And in fact, the same day that the BOP made those representations, the Federal defender in charge for the Eastern District of New York toured the facility and observed directly – and this is part of our papers before the district court – that that simply was not the case. It was apparent. It was spoken to by COs at the facility that there were issues with the heat. Many of them were wearing multiple layers of clothing and had scarves while the inmates were there, basically in their short-sleeved shirts with no – nothing else to, you know, cover themselves. And it was, you know, the dead of winter, and it was freezing. There was, you know, condensation that turned into ice on the windows, on the insides. There are problems that sometimes occur in buildings. I mean, you know, this – I was struck by the fact that this was a series of incidents that the Bureau of Prisons – it's the last set of – last thing that they wanted, you know. Now, you may complain about not getting notice, but I'm sure they would have preferred to have sufficient resources and to have the – all of the components of the facility working properly. But that's just a fact of life. Now, you're saying – what are you actually looking to achieve in this litigation, I guess? Notice? A requirement of notice? Look, I think – What kind of injunction would you like? If I can first just address the setup to the Court's question. Look, at best, perhaps those statements that were made were the result of miscommunications and a lack of adequate and reliable information. At worst, they were deliberate misrepresentations. I'm not taking a position on that directly. You're saying they proceeded in bad faith. Well, I think that there's reason to conclude that they were not sufficiently transparent. And I think that a function of – another example of that is the fact that as Defense Counsel and the Federal Defenders in particular were asking for information, many of their emails and their calls were just ignored. I think also, you know, in the record, this has always stood out to me as a very significant – Because Aretha Franklin once said it's important to have R-E-S-P-E-C-T and you weren't getting it. Look, I think that the BOP has a challenging job. The Federal Defenders have a different, also challenging job, candidly. I'm not suggesting that the institution is not, with respect to institutional plan, trying to do the best that they can. And I'm not here to malign them as an institution and the people that work there. At the same time, I think we have a record here of really inadequate safeguarding of a vital constitutional right of these inmates, many of whom are pretrial. This is a critical part of the working of the system. And we have evidence in the record as a result of those events in the early part of the year. Now, you're right to have access and to have notice because you've been damaged because it's – it's – it's inconvenient and costly for you. Maybe a different – that's a different question. That's – that's your right. That's your concern. Look, I think that that's still a right that derives from the Sixth Amendment, Your Honor. And this is not – you know, there are courts that have parsed this before and that have focused on practices and procedures, not – not anywhere near approaching the confluence of facts that occurred at the beginning of last year, just delays of a couple of hours. Courts have found that where that's consistent, where there's not a policy in place to solve for staffing shortages. You know, we asked in the district court for documents in discovery. We asked for, you know, what are the contingency plans? No one is expecting perfection. We are realistic people. The federal defenders, perhaps more than most, understand that things happen in life that are not ideal and that you can't solve for in, you know, in advance. However, the record is very clear. We think that there was just a lack of due regard. And ultimately, the job, you know, the Sixth Amendment is you have to have – the BOP's own regulations talk about opportunities to provide for attorney visits. That has to mean looking at a number of factors and actually taking it seriously. And when you have documents in the record in the lower court where the BOP is saying things like, look, if this situation continues for another four days, then we're going to put a contingency plan in place. I don't think that satisfies the Sixth Amendment. I doubt that as a policy matter you're going to find much dissension from what you've said on the part of this panel. The question is procedurally how to go forward here. There is a separate lawsuit before the same judge, presumably, right? And when was that suit filed compared to this one? So I think that suit was filed while this case was still pending before the district court. So it was perhaps a month or two after. I'm sorry that I don't have the precise date. Okay. We've kept you well past your time. Thank you so much. Thank you very much. We'll hear from the government. Good morning, Your Honors. Good morning. Could you start out and just address briefly whether you believe that the federal defenders would be subject to a similar motion to dismiss as the one you filed on standing grounds? Were they to move to intervene in the class action lawsuit? Well, without knowing the full parameters, I'm hesitant to engage in that kind of thought experiment. But I would say that most likely we would so move. And the reason for that is the bottom line in this case is that the federal defenders has no cause of action for either their constitutional claim or their statutory claim. Sort of as a matter of ---- the federal defenders could only go into the Brooklyn facility one day a week. Would that violate their Sixth Amendment rights? Could the BOP do that consistent with the Sixth Amendment? Your Honor, I think this Court's jurisprudence and the Supreme Court's have spoken to a rule of flexibility with respect to the Sixth Amendment in the case. Would that violate the Sixth Amendment?   Just given on the facts that the Court has provided. And that's the rule. And the question is whether they could pass that consistent with the Sixth Amendment. Well, Your Honor, I would say that even if it did violate the Sixth Amendment, I think that ---- Would it violate the Sixth Amendment? Yes or no? Your Honor, I don't believe so. Just given on the facts that the Court has provided. And that's because the case law speaks to rule of flexibility when dealing with the Sixth Amendment in the prison context, that it has to bend to the exigencies of the prison system and security and safety, and even the exigencies that were confronted in this case. I thought you were going to answer that the ---- that they're asserting rights that belong to the defendant and the defendants are the inmates, and that the ---- And the inmates are specified or as people who are protected by the Sixth Amendment, there's nothing about lawyers beyond the fact that they're entitled to counsel there. And so it's the inmates' rights, not the federal ---- not the lawyers' rights. Well, that is precisely correct, Your Honor. And I was ---- It's the government's position. You agree with that. I do, Your Honor. And I was trying to give you a direct answer to your question. But I was going to segue into the one that Your Honor has now given or the start that Your Honor has given to that argument, which ---- I'm not making an argument or taking a position. I'm just saying that I ---- He's asking you a question. I'm not supposed to answer. It's a question. Well, the ---- let's say the ---- at least the area in which I would argue. The federal offenders, as I believe Judge Carney pointed out earlier, are essentially trying to assert a right that belongs to their clients. And that is a theme that runs through each of the causes of action. Well, let's talk about that in the APA context, though. I mean, the APA has a very broad and a standing rule and a very low hurdle to surmount in order to be a party aggrieved by a regulatory action. Here, the federal defenders have pointed to regulations that the district court that appear to have been breached or at least have a colorable claim were breached. We have less of a direct focus, the way we do in the Sixth Amendment, on the rights of the accused. Why is the federal defenders not a party aggrieved by the ---- those regulatory breaches under the APA? Your Honor, that's because at its core, the touchstone for zone of interest inquiries in the APA context is whether in enacting particular legislation, Congress intended to permit suit against the government by a particular plaintiff. And so, again, we're coming back to the idea of whether Congress intended to permit the suit. And here, I think with respect to ---- We're in a motion to dismiss here still. And the APA has very low barriers, the Supreme Court has said time and again, in order to assert an injury sufficient to appear, to have Article III standing. And the diversion of resources test for organizational standing is pretty well established in this circuit. Why haven't they at least met that? Maybe they, you know, disappear at the summary judgment stage or at a later stage, but they pointed to regulation. They have diversion of resources complaints that are very plausible. They're seeking injunctive relief that they may well be entitled to, that has longstanding implications for their own use of their resources. Why is that a claim that can't even get past the motion to dismiss stage? Well, Your Honor, as an initial matter, plaintiff cannot rely on organizational standing here. None of the organizational standing cases that plaintiff cites involve causes of action flowing either directly from the Constitution, which is their Sixth Amendment claim, and the cases that hold organizational standing. I'm talking about the APA. I understand, Your Honor. Why doesn't the APA provide a — the regulations of the APA set up a zone of interest that would encompass the plaintiffs here? Your Honor, that's because none of the regulations cited — They do regulate attorneys' visits, right? They provide for attorney visitation. They also specify when, how, often, et cetera, procedures for accommodating legal visits and the like. You know, there are various regulations that focus on that. Your Honor, these regulations do not confer any rights on the inmate's counsel, and the interest served by the regulations is that of the inmate in having access to his attorney, not the reverse. But still, this is precisely — Let me ask you this. Why is not the United States Attorney's Office from the Eastern District of New York doing everything they can to be sure that these defendants have full access to their lawyers? It seems to me it is indisputably in the interest of your office. The last thing you want is people coming into court in proceedings where you're a party. We don't know whether they're adequately counseled. We don't know whether they really understand what is involved in a Rule 11 allocution. We don't know whether they really understand immigration consequences, and on and on and on. This problem, it seems to me, is calculated to make your life so much more complicated. And if I'm a district court judge sitting out there, the last thing I want is a defendant who has had impaired access to counsel. I don't understand why you're on this side of this case. Your Honor, there is no argument here that the U.S. Attorney's Office for the Eastern District of New York is absolutely committed to inmates having proper access to their attorneys. That's your whole case. I guess you wouldn't be here making these arguments if that were true. Respectfully, Your Honor, I — Are you saying that you can't get cooperation from the Bureau of Prisons? No, Your Honor, that's not the case. In fact, the way this — Can you get cooperation from the Bureau of Prisons? Yes, Your Honor. Can you solve all of these problems?  What I can say is that we have, since the very inception of this matter, done our utmost best, including within approximately a day, getting a prize of what was going on at the TRO stage, coming into court, having information at the ready from Bureau of Prisons regarding all kinds of conditions, including attorney visitation, and then remedying that situation. Is there not a better source of information to help you with these responsibilities than the Federal Defenders? I'm sorry, Your Honor. Is there not a better — Yeah. I mean, all these things you're worried about you want to do. The information that you need comes from the Federal Defenders. I would think you would want them in the middle of all of this activity. Well, the fact is, Your Honor, they are in the middle, and they regularly represent their clients in the courts. Well, I want them to stay in the middle of it. Well, they remain in the middle of it because they're bringing these concerns as they arise to the courts, and, in fact, they did so in this matter. The reason that the courts were aware of what was going on was because the inmates were calling their counsel, the counsel were coming into court on their criminal proceedings, and these issues were being raised. And so the procedure you want them to follow under your Sixth Amendment theory, and help me if I understand it, you say the lawyers they have now who claim they don't have access to their clients don't have a Sixth Amendment right to raise that claim, right? That's correct. So what you want them to do is go hire lawyers number two to sue to get them access to lawyer number one. I don't get it. Well, Your Honor, I mean, as it concerns the Federal defenders, the inmates always had access to their attorneys. They disagree. Well, Your Honor, I don't think ‑‑ in the record ‑‑ They disagree. Well, Your Honor, I think it has to be viewed in terms of the exigencies that were going on at the MDC at the time, including, as the judge pointed out earlier, the Federal shutdown, electrical problems, a fire. These were things that could not reasonably be contemplated in advance that I believe that ‑‑ You're taking a ‑‑ your focus in this case is right ‑‑ is on the facts of this case. I think what Judge Parker is thinking about is perhaps the big picture here. The Federal defenders are funded by the Federal government. They are a branch of the judiciary, actually. They come through the ‑‑ it's the judiciary's budget that funds the Federal defenders. So we're talking about a quasi-governmental agency, if you will. At least they're funded this way. Not being able to work out with the Bureau of Prisons a procedure which will resolve all of these problems. Instead, we're going to go to court and we're going to fight for years over what the outcome of this should be. Your Honor, respectfully, I submit ‑‑ In answering, let me just say, I hope ‑‑ Ms. Rodriguez, could you please add ten minutes to the clock for Mr. Green? Thanks. Your Honor, I respectfully submit that it was, in fact, the case that the Federal defenders were bringing these matters to the court. And as it concerns the operation of their business, which is, as Your Honor pointed out, funded by the Federal government, they receive fees from it, that's precisely the reason why they can't have organizational standing here. Because they have no Article III injury. There is no injury, in fact, when there is no harm. And the fact is that the Federal defenders are publicly funded lawyers. It's not a drain on their resources to do what they're paid and required to do. It's their job, in fact, to represent criminal defendants. Let's assume that the other class action hadn't been filed. What redress do the inmates at the Brooklyn House of Detention, what would they have? What redress would they have? They have the same redress that they've always had. Which is what? Which is to bring these matters to the attention of the court during their criminal proceedings, which did not stop during the pendency of any of these exigencies at the BOP, at the MDC. What do you mean, bring them to the attention of the courts? Your Honor, the inmates. To go in pro se and explain what was happening? What are you talking about? Not pro se, Your Honor. In the context of their criminal proceedings. The inmates were still being produced for court. He shows up with his Federal defender, the inmate does, and complains he hasn't had access to his Federal defender. That's correct. That's what you're saying. Yes. Sorry. On a legal basis. Are you rejecting the proposition that an organization that's devoted to providing these services doesn't have a valid Article III injury if it has a significant diversion of resources? I mean, being part of the Federal system and having a limited budget, they can't afford to spend time cooling their heels and waiting for a day to open up where they can go see clients. I mean, every hour is of the essence. Absolutely, Your Honor, and I would not reject that position. What I'm saying is that the cases they have cited for the proposition that they have organizational standing, the Havens case, the Neve case, the Centro case, the Bloomberg case, these are all cases involving a statute that provides a cause of action to them. And there is no such standing in any case that was, one, derived under the Constitution or in an APA case like this because there is no cause of action. There would, in theory, be a cause of action for the individual prisoners in either scenario, in the constitutional claim or the statutory claim. But under the APA, why do not they have a grievance? Why aren't they a party aggrieved if they've suffered being required to devote resources needlessly to handling this changing schedule and lack of access? And here, I think, is where we get back to the zone of interest test. The reason is because they fall outside of the zone of interest with respect to the relevant statute, which is 18 U.S.C. 4001 and 4042, and with respect to the regulations under that statute. Kagan. The regulations charge the warden with putting in place reasonable times and conditions for visits by counsel and stress the urgency of inmate access to counsel. Why aren't they within the zone of interest contemplated by those regulations? Because I submit, Your Honor, that Congress never intended. And again, the touchstone for the zone of interest test is whether Congress intended to permit the suit. And I do not believe, the government does not believe that Congress ever intended for the Federal defenders to assert an economic organizational injury in connection with the VOP statutes. It's in your interest, it's in their interest, and it's in our interest to have this problem solved, because if we go down this road, you're inviting dozens and dozens of 2255s down the road. Put that aside. My question is, are you urging that the proper approach to this problem is to have each defendant come in with his or her Federal defender and object in each and every case to inadequate access to counsel, if that's what they believe has happened? Your Honor, what I'm suggesting is that I believe those who have the cause of action should be bringing the case. And inclusive in that is those with the right, those who are aggrieved. There are 50 inmates out there who believe that they have had inadequate access to counsel. Is it the government's position that each of those should separately take this up with his or her Federal defender and then take this up with the judge to whom the criminal case is assigned? Generally, Your Honor, that wasn't even required. What happened is that in a singular case, in one case, a judge took up the issue and decided to investigate. And so you didn't need 50 individual cases. And, in fact, on the civil side, if you're talking about what remedies do they have and what can they do to vindicate their rights, there is a panoply.  And so it's not the defendant in any of the other cases. So it's the government's position that he has no standing to raise it, right? Yes, Your Honor. So each inmate has to raise it separately in his or her criminal proceeding, right? Well, if the question is how does this issue get addressed, I think that we've seen in the record is that one inmate or one or two inmates brought the issue to the courts and the courts responded. And that did not require the federal defenders as the plaintiff to become involved. Another way to address this issue, and it would be to address it administratively, that is the Bureau of Prisons and the federal defenders sit down and they talk and they try and figure out what do the federal defenders want, what kind of procedures would they like to have in place to be able to accommodate whatever their interests are, and whether that's a problem for the BOP. And that can be worked out. And the whole thing can be taken care of. It can be done through mediation. We have a mediation component of the Second Circuit. Would the government agree to that? I'm sorry. Would the government agree to mediation? Yeah, to a broad mediation that takes into account policy at the highest level of the BOP and enables regulations to be formulated with the assistance of a very broad policy of the federal defenders and save a lot of court time and a lot of suits before two lawsuits could be disposed of and the whole matter could be taken care of by reasonable people acting in a common sense way. I understand Your Honor's point and I take it. And at this moment what I can assure the Court is that that discussion will be had at my office. And I'd also note that my office has spent many, many, many hours on this case, on the case pending before Judge Brody, the period of class action, individual suits that have been brought by prisoner plaintiffs, and steps have been taken in the interim to assuage some of these claims. Relatedly, one of the types of relief that the federal defenders have asked for here was the appointment of a special master, right? They're looking for injunctive relief generally. I didn't see that in the prisoner's suit. They really are seeking damages. And I suppose since this is a facility that houses largely pretrial detainees, they're less well positioned than the federal defenders are to get the court's approval of the appointment of a special master and having kind of ongoing relationship. I mean, that would be a formal court-involved version of kind of what Judge Walker is suggesting that might happen informally through mediation. But that is not pending in the other suit, is it? No, Your Honor. And I think that speaks to the current state of play, which is that the conditions that were complained of concerning the attorney visitation issues here, those issues have largely been addressed, and the BOP has taken steps to confront them. There's been an OIG investigation. All parties are working assiduously to try and get these issues resolved. In the class action case, you're talking about damages because there is no pending emergency. So the federal defenders is the best party, the position to seek the appointment of a special master if, for example, these conditions were to recur on a regular basis. Your Honor, we submit that the federal defenders is not the best party. In fact, it has no cause of action. Who is? The prisoners themselves. To sit down with you and mediate about prisoners? No. A minute ago, you were telling us that the individuals have to raise their rights in their each individual cases. I suggested that as an example, Your Honor. These are pretrial detainees. These people want to get represented and get out. Yes, Your Honor. I agree. This is not like your ordinary prison conditions litigation where people are incarcerated for years and get, by consent decree, court supervision of the conditions of their confinement. That's what also puts the federal defenders in a much stronger position here to say, no one else can take this position. I certainly can understand the equities of the federal defender's position. The government has not been insensitive to that. But what I would point out, and if Your Honor would indulge me for a moment, the federal defenders cannot be the proper party because they have no cause of action. And that's because, as the court has already, I think, observed, they don't have the right under the Sixth Amendment, and they're outside the reserve interests for the statutory claim. Let me actually ask about the statutory claim because I'm looking at the regulations that were promulgated under the relevant statutes, right? And they say the warden shall provide the opportunity for pretrial inmate attorney visits on a seven-day-a-week basis. The warden may not limit the frequency of attorney visits, since the number of visits necessarily is dependent upon the nature and urgency of legal problems involved. You have to set the time and places for visits. They can make exceptions according to local conditions or for an emergency only. The warden shall make every effort to arrange for a visit when prior notification is not practical. These are the Bureau of Prisons implementing the statute in a way that acknowledges clearly what the federal defenders are saying, that they are in the position and have interest of their own in terms of how their resources are allocated to make sure that these people get represented. Your Honor. Just tell me why that's wrong. I don't think anything Your Honor said was wrong. Why doesn't that place them within the zone of interest and give them at least a chance to pursue under the APA a cause of action against the Bureau of Prisons or against the government here for not living up to those mandates? Because as the Supreme Court has held over and over, from the Clark case to the Patchak case to Lexmark, the concern and the focus has always been and remains on congressional intent to permit a suit. And here that's just not present, because it cannot be reasonably assumed that Congress intended that the federal defenders as attorneys for the people who hold rights, as attorneys for people aggrieved, can come in and make a claim under the statute. And 18 U.S.C. 4001 and 4042 concern prison administration. It has no connection at all. Does the United States attorney have any objection to sitting down with the U.S. with the federal defenders and trying to work through these problems? No objection, Your Honor, as far as formalizing that process. You wouldn't have any problem with trying to mediate them? Well, Your Honor, I can't commit to that standing here. As Your Honor well knows, I have authority above me. I'm not the U.S. attorney, but. Not yet. Not yet, exactly. From your lips to God's ears. All right. Very good. Well, thank you for your argument. Thank you, Your Honor. We'll hear from Ms. Dobbs. You have a few minutes of rebuttal. Can you? Administrative, if you will, common sense approach to this, solving this whole problem with the federal defenders, sitting down with the appropriate authorities to try and work out, in mediation, something that is satisfactory to the federal defenders and meets the, and takes into account the needs for flexibility on the part of the MCC and MDC administrators? I think that that sort of practical and pragmatic approach is exactly the direction that this conversation should go. Your Honor, we attempted to do that before filing our case before the district court by trying to engage with the Bureau of Prisons. They were not willing to have that sort of a discussion at that time for whatever reason. Perhaps the circumstances will have changed. Hopefully this dialogue would contribute to that. The federal defenders are certainly open to the sort of process that the court is discussing and, candidly, would vastly prefer to be doing that than to be litigating against the Bureau of Prisons. They have to work collaboratively and try to work collaboratively with the BOP all the time. I'm sure they would love to get back to their regular exchanges and their I think it makes good sense. I would also add that, you know, some of the difficulty with trying to have a pragmatic solution and to have a conversation before ties into some concerns and questions that were expressed previously about We have a procedure called a Jacobson remand where we can send it back to the district court for the purpose of taking further action. I see no reason why it couldn't go back to the district court for the purpose of considering mediation and maybe even appointing a mediator to resolve this whole problem rather than have this drag out. I mean, this is a lawsuit. We're at the standing stage now. There's a lot more to be done if you prevail here. I just wonder whether that at least . . . Maybe it's hopeless. Maybe nothing can be done. Maybe we would learn very quickly that this is a waste of time for us to even be tilting at this windmill, but hopefully that there could be some resolution apart from litigation in this case. Following up on that expression, this is still a live issue, right, access to counsel in the damages context in the other lawsuit. So there are questions that are raised in that suit as well that bear on whatever resolution might be achievable here between the federal defenders and the Bureau of Prisons. Are they segregable, do you think? Well, look, I think that the issue of access and an approach to that that would get both parties closer, get the federal defenders closer to what we think is mandated by the Constitution and what we want and still allow for flexibility on the part of the BOP. I mean, when a TRO was fashioned before the district court, although the BOP was not participatory in attempting to come up with appropriate language, the federal defenders certainly allowed for security interests and concerns. So I think the trend for the federal defenders is to have those kinds of conversations. In terms of the broader case, look, I think the focus should be in any proceeding derived from this case on attorney access. I think you can segregate those broader conditions, allegations that are a part of that class action and that seek, as the Court has noted, a damages remedy and not the sort of injunctive prospective relief that are sought by the federal defenders in this case. So I think there is a way to carve that out without making it something that's mired in the breadth of that case, which is obviously much broader than what we've talked about here. Who's the class counsel? Class counsel is a combination of folks. It's the Emery Shelley Law Firm, and I think that they have participation from various others. And they're both before Judge Brody. That's right. Did you want to say something else before you said? No, I'll just thank the panel for your time. Thank you very much. Well argued. Thank you both. We'll take the matter under advisement.